J-S09005-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: A.A.F., JR., A MINOR, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| APPEAL OF: S.F., FATHER | |
| | No. 2903 EDA 2016 |

Appeal from the Decree August 16, 2016
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-AP-0000385-2016, FID: 51-FN-002549-2014

BEFORE:  SHOGAN, STABILE, and PLATT,[*] JJ.

MEMORANDUM BY SHOGAN, J.:                    **FILED APRIL 12, 2017**

Appellant, S.F. ("Father"), appeals from the decree granting the petition filed by the Philadelphia Department of Human Services ("DHS") to involuntarily terminate his parental rights to his son, A.A.F., Jr., born in July of 2013 ("Child"), pursuant to sections 2511(a)(1), (2), (5), (8), and (b) of the Adoption Act, 23 Pa.C.S. §§ 2101 *et seq*., and changing Child's permanency goal from reunification to adoption under the Juvenile Act, 42 Pa.C.S. § 6351.  After careful review of the record, we affirm.[1]

---

[*]  Retired Senior Judge assigned to the Superior Court.

[1]  The trial court also entered a decree terminating the parental rights of V.B. ("Mother") to Child.  Mother's appeal, docketed at 2955 EDA 2016, is addressed in a separate memorandum.

The trial court thoroughly set forth its factual findings, which we adopt and incorporate herein. *See* Trial Court Opinion, 11/14/16, at 1–4

Father raises the following issues for review:

1. Did the [t]rial judge rule in error that the Philadelphia City Solicitor's Office [met] its burden of proof that Father's parental rights to [his Child] should be terminated.

2. Did the trial judge rule in error that the termination of Father's parental rights would best serve the needs and welfare of [Child].

3. Did the trial judge rule in error by changing the goal to adoption.

Father's Brief at 3.

In reviewing an appeal from an order terminating parental rights, we adhere to the following standard:

[A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. *In re: R.J.T.*, 608 Pa. 9, 9 A.3d 1179, 1190 (2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. *Id*.; *R.I.S.*, 36 A.3d [567, 572 (Pa. 2011) (plurality)]. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. *Id*.; *see also Samuel-Bassett v. Kia Motors America, Inc.*, ___ Pa. ___, 34 A.3d 1, 51 (2011); *Christianson v. Ely*, 575 Pa. 647, 654, 838 A.2d 630, 634 (2003). Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. *Id*.

*In re Adoption of S.P.*, 47 A.3d 817, 826–827 (Pa. 2012).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental

rights are valid. ***In re R.N.J. & G.J.***, 985 A.2d 273, 276 (Pa. Super. 2009). Moreover, we have explained that "[t]he standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." ***Id***. (quoting ***In re J.L.C.***, 837 A.2d 1247, 1251 (Pa. Super. 2003)).

The termination of parental rights involves a bifurcated analysis, governed by Section 2511 of the Adoption Act.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child.

***In re L.M.***, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

In the matter *sub judice*, the trial court terminated Father's parental rights under 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b), which provide as follows:

**§ 2511. Grounds for involuntary termination**

**(a) General rule**.--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

> (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\* \* \*

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

\* \* \*

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

\* \* \*

**(b) Other considerations**.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b). We need only agree with the trial court as to any one subsection of section 2511(a), as well as section 2511(b), in order to affirm. **In re B.L.W.**, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*); **see also In the Interest of M.T.**, 101 A.3d 1163, 1179 (Pa. Super. 2014) (*en banc*) (this Court may affirm the trial court's decision regarding the termination of parental rights with regard to any one subsection of section 2511(a)). As Father did not identify any particular statutory subsection wherein DHS failed to meet its burden of proof sufficient to support termination of Father's rights, we briefly delineate the requirements for termination under each relevant subsection.

Termination under subsection 2511(a)(1) involves the following:

To satisfy the requirements of section 2511(a)(1), the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. In addition,

Section 2511 does not require that the parent demonstrate both a settled purpose of relinquishing parental claim to a child and refusal or failure to perform parental duties. Accordingly, parental rights may be terminated pursuant to Section 2511(a)(1) if the parent either demonstrates a settled purpose of relinquishing parental claim to a child or fails to perform parental duties.

Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his . . . conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

*In re Z.S.W.*, 946 A.2d 726, 730 (Pa. Super. 2008) (internal citations omitted). Regarding the six-month period prior to filing the termination petition:

> [T]he trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his . . . parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

*In re B.,N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004) (citations omitted).

23 Pa.C.S. § 2511(a)(2) provides statutory grounds for termination of parental rights where it is demonstrated by clear and convincing evidence that "[t]he repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent." *In re Adoption of S.P.*, 47 A.3d 817, 827 (Pa. 2012). "The grounds for termination of parental rights under section 2511(a)(2), due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct; to the contrary those grounds may include acts of refusal as well as incapacity to perform parental duties." *In the Interest of A.L.D., Jr.*, 797 A.2d 326, 337 (Pa. Super. 2002) (citation omitted). "Parents are required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities." *Id.* at 340.

Termination of parental rights under section 2511(a)(5) requires that: "(1) the child has been removed from parental care for at least six months; (2) the conditions which led to removal and placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child." *In re Z.P.*, 994 A.2d 1108, 1118 (Pa. Super. 2010) (citation omitted).

To terminate parental rights under section 2511(a)(8), the petitioner must prove the following: "(1) [t]he child has been removed from parental care for [twelve] months or more from the date of removal; (2) the conditions which led to the removal or placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child." *In re Adoption of M.E.P.*, 825 A.2d 1266, 1275–1276 (Pa. Super. 2003).

Finally, under section 2511(b), the court must consider whether termination will meet the child's needs and welfare. *In re C.P.*, 901 A.2d 516, 520 (Pa. Super. 2006). "Intangibles such as love, comfort, security, and stability are involved when inquiring about the needs and welfare of the child. The court must also discern the nature and status of the parent-child bond, paying close attention to the effect on the child of permanently severing the bond." *Id.* (citation omitted). Significantly,

> [i]n this context, the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship. When conducting a bonding analysis, the court is not required to

- 7 -

use expert testimony. . . . Social workers and caseworkers can offer evaluations as well. . . . Additionally, section 2511(b) does not require a formal bonding evaluation.

*In re Z.P.*, 994 A.2d at 1121 (internal citations omitted).

"The statute permitting the termination of parental rights outlines certain irreducible minimum requirements of care that parents must provide for their children, and a parent who cannot or will not meet the requirements within a reasonable time following intervention by the state, may properly be considered unfit and have his . . . [parental] rights terminated." *In the Interest of B.L.L.*, 787 A.2d 1007, 1013 (Pa. Super. 2001) (citation omitted). Furthermore, this Court has observed:

Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his . . . ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with [the child's] physical and emotional needs.

*In re B.,N.M.*, 856 A.2d at 855 (internal citations omitted). "[A] parent's basic constitutional right to the custody and rearing of his . . . child is converted, upon the failure to fulfill his . . . parental duties, to the child's right to have proper parenting and fulfillment of . . . [his] potential in a permanent, healthy, safe environment." *Id.* at 856.

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Joseph L. Fernandes, we conclude Father's issues on appeal merit no relief. The trial court opinion comprehensively discusses and properly disposes of the questions presented. (*See* Trial Court Opinion, 11/14/16, at 6, 8, 10–15). As to termination under section 2511(a)(1), the trial court found that: Father did not complete housing services provided by the Achieving Reunification Center; Father did not allow the Community Umbrella Agency ("CUA") to assess his living conditions and he has not provided a current address; though Father is employed, he refused to provide pay stubs, as ordered by the court; Father was ordered to obtain a state identification, but the only evidence of complying with this objective was a notice from Homeland Security with a received date of August 1, 2016, well after the date the petition for termination was filed; Father did not engage in any mental health services and testified that he was unwilling to participate in these services; [2] Father missed one quarter of his supervised visits and Father has never complied with court orders nor has he successfully

---

[2] We note that Father testified that he did not refuse mental health counseling, but asserted that therapy was unavailable to him because he did not have a state-issued identification. N.T., 8/16/16, at 91. However, Father's Parenting Capacity Evaluation indicated that Father voiced an objection to mental health therapy because "[Father's caseworker] wants to know my personal life. I want to stop. I don't need therapy." DHS Exhibit 15, 6/11/15, at 4.

completed his Single Case Plan ("SCP") objectives that were explained to him several times. Based upon these findings, the trial court concluded that Father evidenced a settled purpose of relinquishing his parental claim to Child. Trial Court Opinion, 11/14/16, at 6. Citing this same behavior by Father, the trial court also determined that termination of parental rights was likewise warranted under sections 2511(a)(2), (5), and (8). *Id.* at 8, 11, 13.

The trial court also decided that DHS proved, by clear and convincing evidence, that termination of parental rights served the needs and welfare of the child, pursuant to Section 2511(b), premised upon the following: Father missed one quarter of his visits with Child over the life of the case; Child recognizes Father, but "there is no hint of a deeper, parent-child bond"; Child is in a pre-adoptive home; the CUA caseworker, Stephanie Riley, testified that Child is bonded with his foster parents and would not suffer irreparable harm if Father's rights were terminated.[3] Trial Court Opinion, 11/14/16, at 14.

While Father contends that his parental rights should not be terminated because he was continuing to work on achieving his SCP objectives, his actions in this regard amount to too little, too late. Particularly regarding the goal of receiving mental health therapy and

_____

[3] Ms. Riley also testified that the bond between Father and Child "goes from Father to [Child.]." N.T., 8/16/16, at 50.

acquiring state identification, the latter which Father avers was necessary for him to procure before he could seek counseling, the record indicates that Father initiated the process to acquire the identification well after the termination petition was filed. N.T., 8/16/16, Father's Exhibit F1. Furthermore, while Father asserts that he has been employed and has suitable housing, he never complied with court orders to submit pay stubs nor has he supplied an address for his residence. "Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with [the child's] physical and emotional needs." *In re B.,N.M.*, 856 A.2d at 855.

Father has failed to demonstrate that the trial court's factual findings were unsupported or that the trial court made an error of law. We therefore conclude that the trial court did not abuse its discretion in terminating Father's parental rights. Accordingly, we affirm on the basis of the trial court opinion.[4] *See* Trial Court Opinion, 11/14/16, at 6, 8, 10–15.

Father also argues that the trial court erred in changing Child's permanency goal from reunification to adoption. The trial court explained its rationale for the goal change as follows:

> [Father] also alleges that the court erred in changing the [Child's] permanency goal from reunification to adoption. In a

---

[4] In the event of further proceedings in this matter, Father is directed to attach a copy of that opinion.

change of goal proceeding, the child's best interest must be the focus of the trial court's determination. The child's safety and health are paramount considerations. _In re A.H._, 763 A.2d 873 (Pa. Super. 2000). Pennsylvania's Juvenile Act recognizes family preservation as one of its primary purposes. _In the Interest Of R.P. a Minor_, 957 A.2d 1205 (Pa. Super. 2008). As a result, welfare agencies must make efforts to reunify the biological parents with their child. Nonetheless, if those efforts fail, the agency must redirect its efforts toward placing the child in an adoptive home. Agencies are not required to provide services indefinitely when a parent is unwilling or unable to apply the instructions received. _In re R.T._, 778 A.2d 670 (Pa. Super. 2001). The trial court should consider the best interest of the child as it exists presently, rather than the facts at the time of the original petition.

* * *

Father does not have appropriate housing. After eighteen month[s], he is still unable to provide a current address. (N.T. 8/16/16, pgs. 31, 66, 95). He cannot provide proof of his employment. (N.T. 8/16/16, pgs. 32-33). Father has never obtained a non-driver's state identification, as ordered by the court from the beginning of the case. Father attempted to show that he applied for work authorization through the Department of Homeland Security, but gave no explanation why it took eighteen months to begin the process. (N.T. 8/16/16, pgs. 33-34, 91, 96), (Father's Exhibit 1). Father testified that he will not engage with mental health services. (N.T. 8/16/16, pgs. 34, 69, 91).[5] He has missed a quarter of his visits with [Child]. Father's visits have never been changed to unsupervised. (N.T. 8/16/16, pgs. 35-37). Father has a criminal record for sexual offenses against a minor. (N.T. 8/16/16, pg. 46). DHS and CUA have made reasonable efforts to provide Father with services. (N.T. 8/16/16, pg. 109). [Child] recognizes Father during visits, but there is no deeper relationship. (N.T. 8/16/16, pgs. 50, 68). [Child] is in a pre-adoptive home with bonded foster parents who care for [his] needs. It is in [Child's] best interest to be adopted. (N.T. 8/16/16, pgs. 48-49). Because these facts were clearly and convincingly established by the credible testimony of

---

[5] **_See_** note 2, **_supra_**.

- 12 -

DHS's witnesses, the court's change of permanency goal from reunification to adoption was proper.

Trial Court Opinion, 11/14/16, at 14–15.

This Court has stated:

[T]he focus of all dependency proceedings, including change of goal proceedings, must be on the safety, permanency, and well-being of the child.  The best interests of the child take precedence over all other considerations, including the conduct and the rights of the parent . . . [W]hile parental progress toward completion of a permanency plan is an important factor, it is not to be elevated to determinative status, to the exclusion of all other factors.

*In the Interest of M.T.*, 101 A.3d at 1175 (quoting *In re A.K.,* 936 A.2d 528, 534 (Pa. Super. 2007)).  Moreover, "the standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law."  Accordingly, we review for an abuse of the trial court's discretion.  *In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010) (quotation omitted).

On appeal, Father primarily disagrees with the trial court's assessment of Father's efforts to meet his SCP goals.  While Father argues for a different reading of the facts, we will not disturb the trial court's findings because they are supported by the record.  Furthermore, while Father references the affection and perceived bond he shares with Child, he offers no argument that he has taken steps to assure the safety, permanence and well-being of

Child which are of paramount importance in goal change proceedings. Accordingly, the trial court's ruling changing the goal from reunification to adoption was well within its discretion in this matter and will not be disturbed on appeal.

Decree affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/12/2017

Filed 11/14/2016 6:48:00 AM Superior Court Eastern District
2955 EDA 2016

# IN THE COURT OF COMMON PLEAS
# FOR THE COUNTY OF PHILADELPHIA
# FAMILY COURT DIVISION

| | | |
|---|---|---|
| In the Interest of J.A.J., a Minor | : | CP-51-DP-0002785-2014 |
| | : | CP-51-AP-0000384-2016 |
| In the Interest of A.F., a Minor | : | CP-51-DP-0002788-2014 |
| | : | CP-51-AP-0000385-2016 |
| | : | |
| | : | FID: 51-FN-002549-2014 |
| | : | |
| APPEAL OF: S.F., Father | : | 2903 EDA 2016 |
| APPEAL OF: V.B., Mother | : | 2955/2956 EDA 2016 |

## OPINION

**Fernandes, J.:**

Appellants S.F. ("Father") and V.B. ("Mother") appeal from the order entered on August 16, 2016, granting the petition filed by the Philadelphia Department of Human Services ("DHS"), to involuntarily terminate their parental rights to J.A.J. ("Child 1") and A.F. ("Child 2") ("Children") pursuant to the Adoption Act, 23 Pa.C.S.A. §2511(a)(1), (2), (5), (8) and (b). Jeffrey Bruch, Esq., counsel for Father, and Andre Martino, Esq., counsel for Mother, filed timely Notices of Appeal with Statements of Matters Complained of on Appeal pursuant to Rule 1925(b).

## Factual and Procedural Background:

The family in this case became involved with DHS on August 25, 2014, when DHS received a General Protective Services ("GPS") report that Mother and Father had been assaulted in front of the Children, that their home lacked electricity and that Mother used cocaine in the presence of the Children. Further GPS reports alleged that Mother left the Children alone in the house, and that Mother was working as a prostitute. On October 28, 2014, DHS visited the home, which was filthy and full of cockroaches. The Children did not have beds or food. DHS began plans to implement services for Mother and Father in the home. On November 6, 2014, DHS again visited the home. Mother and Father refused to allow DHS inside, and refused to sign or agree to a Safety Plan that DHS had developed. DHS subsequently learned that Mother and Father were about to be evicted from their home, and on December 1, 2014, DHS obtained an Order of Protective

Custody for the Children, removed the Children and placed them in foster care. On December 10, 2014, the Children were adjudicated dependent and fully committed to DHS custody. The case was then transferred to a Community Umbrella Agency ("CUA") which developed a Single Case Plan ("SCP") for Mother and Father. Over the course of 2015 and 2016, Mother and Father failed to successfully complete their SCP objectives or follow court orders, and were never rated fully compliant at regular permanency review hearings. On April 27, 2016, DHS filed petitions to terminate Mother's and Father's parental rights.

The goal change and termination trial was held on August 16, 2016. At the trial, the CUA social worker testified that Mother's SCP objectives had been the same for the entire life of the case. Mother's objectives were to attend the Clinical Evaluation Unit ("CEU") for assessment and recommended drug treatment, obtain appropriate housing, attend supervised visitation, sign appropriate consents, attend medical appointments for the Children, attend mental health treatment and obtain employment, housing and parenting services at the Achieving Reunification Center ("ARC"). (N.T. 8/16/16, pgs. 20-22). Mother did not complete parenting classes and does not have employment. She did not successfully complete services at ARC, and does not have appropriate housing. (N.T. 8/16/16, pg. 23). Mother was invited to the Children's medical appointments, but did not attend. (N.T. 8/16/16, pg. 24). Mother only began attending mental health treatment after the petitions were filed on April 27, 2016. (N.T. 8/16/16, pgs. 24-25). Mother has not obtained an assessment from CEU, has not taken any random drug screens and has been engaged in drug treatment for only ten weeks. (N.T. 8/16/16, pgs. 26-27). Mother's own exhibit shows that Mother's creatinine levels on two occasions were low and close to dilution. During her drug and alcohol treatment, Mother has been 'washing' her urine of illegal substances. (N.T. 8/16/16, pgs. 82-86), (Mother's Exhibit 1). Mother has had these objectives explained to her a number of times. (N.T. 8/16/16, pg. 28). She has consistently attended supervised visits in the last three months, but for the first fourteen months of the case, Mother missed nearly half her visits. Reunification with Mother is not appropriate at this time. (N.T. 8/16/16, pgs. 28-29). Mother never signed the required consents. (N.T. 8/16/16, pg. 70). Father was confirmed, by paternity test, as the father of Child 2 only. (N.T. 8/16/16, pg. 30). Father's objectives, which have remained the same for the life of the case, are to attend supervised visits, take a Parenting Capacity Evaluation ("PCE"), obtain mental health treatment, obtain state-issued identification

and attend ARC for housing and employment services. Father did not complete housing services at ARC. (N.T. 8/16/16, pg. 31). Father has never allowed CUA to do a home assessment and never provided a current address. (N.T. 8/16/16, pg. 66). Father has employment but has not provided pay stubs, despite court orders. (N.T. 8/16/16, pg. 32-33). Father was born in Liberia, and does not have any government-issued identification. (N.T. 8/16/16, pg. 33). Father did not engage with any mental health services. (N.T. 8/16/16, pgs. 34, 69). Father has a criminal conviction for corruption of a minor. Father has told CUA that he did not know the minor was underage. (N.T. 8/16/16, pgs. 35-36). Father missed roughly a quarter of his supervised visits. (N.T. 8/16/16, pg. 37). Child 2 recognizes Father during visits. (N.T. 8/16/16, pg. 68). The CUA social worker testified that Child 2 is in a pre-adoptive home. (N.T. 8/16/16, pg. 48). Child 2 is bonded with his foster parents, and would suffer no irreparable harm if Mother's or Father's parental rights were terminated. It is in Child 2's best interest to be adopted. (N.T. 8/16/16, pg. 49). While Mother has a positive relationship with Child 2, Child 2 does not reciprocate. (N.T. 8/16/16, pg. 50). Child 1 has a positive relationship with his foster parents, who care for his medical and emotional needs. (N.T. 8/16/16, pg. 52). Child 1 suffers no effects when parents miss visits. (N.T. 8/16/16, pgs. 53-54). The CUA social worker testified that Child 1 would be persistently sad if Mother's rights were terminated, even if he attended therapy. (N.T. 8/16/16, pgs. 54-55). However, Child 1 is also sad when Mother misses visits. Their relationship is unhealthy, leaving Child 1 in limbo without permanency. (N.T. 8/16/16, pgs. 56, 59). Child 1 and Child 2 visit each other regularly, and their foster parents interact well. (N.T. 8/16/16, pg. 57).

Mother testified that, for the last three months, she had been attending a program covering drug and alcohol treatment, parenting and other life skills. (N.T. 8/16/16, pgs. 74-75). Mother provided a parenting certificate and drug screens from this program. The screens were all negative. (N.T. 8/16/16, pgs. 75-76). Mother testified that during visits she regularly checks the Child 2's body for bruises. (N.T. 8/16/16, pgs. 79, 88). Mother testified that her drug of choice had been heroin and cocaine, but she was currently on methadone as treatment. Her drug screens all showed positives for methadone. (N.T. 8/16/16, pgs. 80-81). Father testified that he had not engaged with mental health treatment, and did not wish to engage. (N.T. 8/16/16, pg. 91). He had spent the last nineteen months trying to obtain legal status. Father has not availed himself of CUA services as ordered by the court to obtain a non-driver's state identification. As of the time of the trial, he still

did not have a state identification. (N.T. 8/16/16, pgs. 91, 96). The court found that DHS had made reasonable efforts to reunify the Children with Mother and Father. Following argument, the court terminated Mother's parental rights to the Children, and Father's parental rights to Child 2 and changed the Children's goal to adoption.[1] Mother and Father subsequently filed appeals.

**Discussion:**

Father raises the following errors on appeal:

1. The judge ruled in error that [DHS] met its burden of proof to terminate Father's parental rights. The burden in a termination hearing is clear and convincing. At the termination hearing [DHS] did not put on enough evidence to meet its burden of proof that Father's rights should be terminated.

2. The judge ruled in error that it would be in the best interest and/or termination would best serve the needs of the child. It would not be in the best interest of the child or serve the needs of the child if Father's parental rights were terminated. The child was bonded and affectionate with Father.

3. The judge ruled in error that [DHS] met its burden that the goal should be changed to adoption. The burden is clear and convincing and [DHS] did not meet its burden.

Mother avers that:

1. The trial court's determinations as to Mother's conduct under [23 Pa.C.S.A. §2511(a)(1), (2), (5), (8) and (b)] were not supported by clear and convincing evidence.

For the purposes of this appeal, Father's and Mother's issues will be consolidated into the following: Did the trial court err or abuse its discretion when it found clear and convincing evidence to terminate Father's and Mother's parental rights pursuant to 23 Pa.C.S.A. §2511(a)(1), (2), (5), (8) and (b) and change the goal to adoption?

Father and Mother have appealed the involuntary termination of their parental rights. The grounds for involuntary termination of parental rights are enumerated in the Adoption Act at 23 Pa.C.S.A. §2511(a), which provides the following grounds for §2511(a)(1):

---

[1] The court also terminated the parental rights of Child 1's father, but this father has not appealed.

**(a) General rule** - The rights of a parent, in regard to a child, may be terminated after a petition is filed on any of the following grounds:

(1) The parent, by conduct continuing for a period of at least six months immediately preceding the filing of the petition, has either evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

In proceedings to involuntarily terminate parental rights the burden of proof is on the party seeking termination, which must establish the existence of grounds for termination by clear and convincing evidence. _In re Adoption of Atencio_, 650 A.2d 1064 (Pa. 1994). To satisfy Section (a)(1), the moving party must produce clear and convincing evidence of conduct sustained for at least six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. However, the six-month time period should not be applied mechanically; instead, the court must consider the whole history of the case. _In re B.N.M._, 856 A.2d 847, 855 (Pa. Super. 2004). The standard of clear and convincing evidence is defined as testimony that is so clear, direct weighty and convincing as to enable the trier of fact to come to a clear conviction without hesitance of the truth of precise facts in issue.

The petitions for involuntary termination were filed on April 27, 2016. Mother's SCP objectives were to attend CEU for assessment and recommended drug treatment, obtain appropriate housing, attend supervised visitation, sign appropriate consents, attend medical appointments for the Children, attend mental health treatment and obtain employment, housing and parenting services at ARC. (N.T. 8/16/16, pgs. 20-22). In the six months prior to the filing of the petition, Mother did not complete parenting classes or obtain employment. She did not successfully complete services at ARC, and does not have appropriate housing. (N.T. 8/16/16, pg. 23). Mother did not attend any of the Children's medical appointments, though she was invited. (N.T. 8/16/16, pg. 24). Mother did not begin mental health treatment during the six-month period. (N.T. 8/16/16, pgs. 24-25). Mother never attended CEU, never obtained an assessment and did not engage in drug and alcohol treatment during the six-month period. (N.T. 8/16/16, pgs. 26-27). Mother missed half of her supervised visits during the six-month period. (N.T. 8/16/16, pgs. 28-29). Mother never signed the required consents. (N.T. 8/16/16, pg. 70). Looking beyond the six-month period, Mother's objectives have been the same for the life of this case, and have been explained

to her a number of times. (N.T. 8/16/16, pgs. 20-22, 28). It was only after the petitions were filed that Mother started working on some of her objectives at My Sister's Place (N.T. 8/16/16, pgs. 74-75, 78). Mother still has not successfully complete any objectives and is in no position to take custody of the Children. (N.T. 8/16/16, pgs. 80-87). Mother evidenced a settled purpose of relinquishing her parental claim since she has failed to perform parental duties. As a result the trial court did not abuse its discretion by finding clear and convincing evidence that Mother, by her conduct, had refused and failed to perform parental duties, so termination under this section was proper.

Father's objectives, which have remained the same for the life of the case, are to attend supervised visits, take a PCE, obtain mental health treatment, obtain state-issued identification and attend ARC for housing and employment services. Father did not complete housing services at ARC. (N.T. 8/16/16, pg. 31). Father has never allowed CUA to assess his home, and has not provided a current address. (N.T. 8/16/16, pgs. 66, 95). Father has employment but has not provided pay stubs, despite court orders. (N.T. 8/16/16, pgs. 32-33). Father was ordered to obtain state identification. The only evidence that Father began the process is a notice from the Department of Homeland Security, which shows a "received date" of August 1, 2016, well after the filing of the petition. (N.T. 8/16/16, pgs. 33, 91, 96), (Father's Exhibit 1). Father did not engage with any mental health services, and testified that he does not wish to engage. (N.T. 8/16/16, pgs. 34, 69, 91). Father missed a quarter of his supervised visits. (N.T. 8/16/16, pg. 37). Looking beyond the six-month period, Father has never been compliant with court orders or successfully completed all his SCP objectives, though they have been explained to him several times. (N.T. 8/16/16, pg. 39). Father evidenced a settled purpose of relinquishing his parental claim since he has failed to perform parental duties. As a result the trial court did not abuse its discretion by finding clear and convincing evidence that Father, by his conduct, had refused and failed to perform parental duties, so termination under this section was proper.

The trial court also terminated Father's and Mother's parental rights under 23 Pa.C.S.A. §2511(a)(2). This section of the Adoption Act includes, as a ground for involuntary termination of parental rights, the repeated and continued incapacity, abuse, neglect or refusal of the parent that causes the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and the conditions and causes of the incapacity, abuse, neglect or

refusal cannot or will not be remedied by the parent. This ground is not limited to affirmative misconduct. It may include acts of refusal to perform parental duties, but focuses more specifically on the needs of the child. *Adoption of C.A.W.*, 683 A.2d 911, 914 (Pa. Super. 1996).

Mother has demonstrated a pattern of noncompliance with her SCP objectives and court orders. Mother's SCP objectives were to attend CEU for assessment and recommended drug treatment, obtain appropriate housing, attend supervised visitation, sign appropriate consents, attend medical appointments for the Children, attend mental health treatment and obtain employment, housing and parenting services at ARC. (N.T. 8/16/16, pgs. 20-22). Mother did not successfully complete employment or housing services at ARC, and does not have appropriate housing. (N.T. 8/16/16, pg. 23). Mother is currently at My Sister's Place. (N.T. 8/16/16, pgs. 74-75, 78). Mother did not attend any of the Children's medical appointments, though she was invited. (N.T. 8/16/16, pg. 24). Mother has not engaged with mental health treatment. (N.T. 8/16/16, pgs. 24-25). Mother never attended CEU, never obtained an assessment and did not engage in drug and alcohol treatment until May 2016. (N.T. 8/16/16, pgs. 26-27). Mother has consistently tested positive for methadone since beginning treatment. (N.T. 8/16/16, pg. 81). Mother testified that she had completed parenting classes in her drug and alcohol treatment program, but only produced a certificate with crossed-out dates. (N.T. 8/16/16, pgs. 86-87, 90). Mother's own exhibit shows that Mother's creatinine levels on two occasions were low and close to dilution. During her drug and alcohol treatment, Mother has been 'washing' her urine of illegal substances. When Mother was cross-examined about this issue, she was evasive and not credible. (N.T. 8/16/16, pgs. 82-86), (Mother's Exhibit 1). Mother never signed the required consents. (N.T. 8/16/16, pg. 70). She has consistently attended supervised visits in the last three months, but for the first fourteen months of the case, Mother missed nearly half her visits. Reunification with Mother is not appropriate at this time. (N.T. 8/16/16, pgs. 28-29). Mother's objectives have been the same for the life of this case, and have been explained to her a number of times. (N.T. 8/16/16, pgs. 20-22, 28). The Children have been in care since December 1, 2014. During that time, Mother has failed to take affirmative steps to successfully complete her objectives to place himself in a position to parent the Children. (N.T. 8/16/16, pgs. 80-87). Mother's delay in starting drug treatment and refusal to engage in mental health treatment shows she would be unable to remedy the causes of her incapacity in order to provide the Children with essential parental care, control or subsistence

necessary for their physical and mental well-being. The Children need permanency, which Mother cannot provide. Termination under this section was also proper.

Father has demonstrated a pattern of noncompliance with his SCP objectives and court orders. Father's objectives, which have remained the same for the life of the case, are to attend supervised visits, obtain mental health treatment, obtain state-issued identification and attend ARC for housing and employment services. Father did not complete housing services at ARC. (N.T. 8/16/16, pg. 31). CUA has not been able to see Father's current home, (N.T. 8/16/16, pgs. 66, 95). Father has employment but has not provided pay stubs, despite court orders. (N.T. 8/16/16, pgs. 32-33). Father was ordered to obtain state identification. The only evidence that Father began this process is a notice from the Department of Homeland Security, which shows a "received date" of August 1, 2016. (N.T. 8/16/16, pgs. 33, 91, 96), (Father's Exhibit 1). Father did not engage with any mental health services, and testified that he does not wish to engage. (N.T. 8/16/16, pgs. 34, 69, 91). Father missed a quarter of his supervised visits. (N.T. 8/16/16, pg. 37). Father has never been compliant with court orders or successfully completed all his SCP objectives, though they have been explained to him several times. (N.T. 8/16/16, pg. 39). During the time Child 2 has been in care, Father has failed to take affirmative steps to successfully complete his objectives to place himself in a position to parent Child 2. Father's conduct and failure to comply with court orders shows that Father would be unable to remedy the causes of his incapacity in order to provide the Child 2 with essential parental care, control or subsistence necessary for his physical and mental well-being. Child 2 needs permanency, which Father cannot provide. Termination under this section was also proper.

Father and Mother also appeal the trial court's termination of parental rights under 23 Pa.C.S.A. §2511(a)(5), which permits termination when a child was removed, by court or voluntary agreement, and placed with an agency if, for at least six months, the conditions which led to the placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services reasonably available to the parent are not likely to remedy the conditions leading to placement, and termination best serves the child's needs and welfare. DHS, as a child and youth agency, cannot be required to extend services beyond the period of time deemed as reasonable by the legislature or be subjected to herculean efforts. A child's life cannot be put on hold in hope that the parent will summon the ability to handle the

responsibilities of parenting. *In re J.T.*, 817 A.2d 509 (Pa. Super. 2001). As a consequence, Pennsylvania's Superior Court has recognized that a child's needs and welfare require agencies to work toward termination of parental rights when a child has been placed in foster care beyond reasonable temporal limits and after reasonable efforts for reunification have been made by the agency, which have been ineffective. This process should be completed within eighteen months. *In re N.W.*, 851 A.2d 508 (Pa. Super. 2004).

The Children in this case have been in DHS custody since December 1, 2014. They were taken into care because Mother and Father were unable to parent. Mother's SCP objectives were to attend CEU for assessment and recommended drug treatment, obtain appropriate housing, attend supervised visitation, sign appropriate consents, attend medical appointments for the Children, attend mental health treatment and obtain employment, housing and parenting services at ARC. (N.T. 8/16/16, pgs. 20-22). Mother did not successfully complete employment or housing services at ARC, and does not have appropriate housing. (N.T. 8/16/16, pg. 23). Mother is currently at My Sister's Place. (N.T. 8/16/16, pgs. 74-75, 78). Mother did not attend any of the Children's medical appointments, though she was invited. (N.T. 8/16/16, pg. 24). Mother has not engaged with mental health treatment. (N.T. 8/16/16, pgs. 24-25). Mother never attended CEU, never obtained an assessment and did not engage in drug and alcohol treatment until May 2016. (N.T. 8/16/16, pgs. 26-27). Mother has consistently tested positive for methadone since beginning treatment. On at least two occasions, Mother was 'washing' her urine of illegal substances. Mother was evasive during her testimony and not credible. (N.T. 8/16/16, pgs. 81-86). Mother testified that she had completed parenting classes in her drug and alcohol treatment program, but only produced a certificate with crossed-out dates. (N.T. 8/16/16, pgs. 86-87, 90). Mother never signed the required consents. (N.T. 8/16/16, pg. 70). She has consistently attended supervised visits in the last three months, but for the first fourteen months of the case, Mother missed nearly half her visits. Reunification with Mother is not appropriate at this time. (N.T. 8/16/16, pgs. 28-29). Mother's objectives have been the same for the life of this case, and have been explained to her a number of times. (N.T. 8/16/16, pgs. 20-22, 28). Because of Mother's delay in engaging with services, she is not ready to parent. Child 1 is in a foster home with parents who provide for his physical and emotional needs. (N.T. 8/16/16, pg. 52). Child 1 does not suffer any effects when Mother misses visits. (N.T. 8/16/16, pgs. 53-54). Child 1 is happy to visit with Mother, but her

inconsistent visitation has left him in limbo and is unhealthy for his mental wellbeing. (N.T. 8/16/16, pgs. 56, 59). Child 2 is bonded with his foster parents, who wish to adopt him. (N.T. 8/16/16, pgs. 48-49). Child 2 does not have a strong relationship with Mother. (N.T. 8/16/16, pg. 50). Termination is in the best interest of the Children. Mother has been given ample time to place herself in a position to parent the Children. The Children need stability. As a result the trial court found that termination of Mother's parental rights was in the best interest of the Children for their physical, intellectual, moral and spiritual well-being. Because the trial court made these determinations on the basis of clear and convincing evidence, termination under this section was also proper.

Child 2 in this case has been in DHS custody since December 1, 2014. He was taken into care because Mother and Father were unable to parent. Father's objectives, which have remained the same for the life of the case, are to attend supervised visits, obtain mental health treatment, obtain state-issued identification and attend ARC for housing and employment services. Father did not complete housing services at ARC. (N.T. 8/16/16, pg. 31). Father has not provided his current address to CUA, although he has been order by the court. (N.T. 8/16/16, pgs. 66, 95). Father has employment but has not provided pay stubs, despite court orders. (N.T. 8/16/16, pgs. 32-33). Father was ordered to obtain state identification. The only evidence that Father began this process is a notice from the Department of Homeland Security, which shows a "received date" of August 1, 2016. (N.T. 8/16/16, pgs. 33, 91, 96), (Father's Exhibit 1). Father did not engage with any mental health services, and testified that he does not wish to engage. (N.T. 8/16/16, pgs. 34, 69, 91). Father missed a quarter of his supervised visits. (N.T. 8/16/16, pg. 37). Father has never been compliant with court orders or successfully completed all his SCP objectives, though they have been explained to him several times. (N.T. 8/16/16, pg. 39). Because of Father's unwillingness and delay in engaging with services, he is not yet ready to parent. The trial court properly found that Father was not able to remedy the conditions which led to Child 2's placement within a reasonable time. Child 2 recognizes Father during visits, but there is no deeper relationship. (N.T. 8/16/16, pg. 68). Child 2 is in a pre-adoptive home with bonded foster parents who care for his needs. It is in Child 2's best interest to be adopted. (N.T. 8/16/16, pgs. 48-49). Father has been given more than ample time to place himself in a position to be a parent to Child 2. Child 2 needs stability. As a result the trial court found that termination of Father's parental

rights was in the best interest of Child 2 for his physical, intellectual, moral and spiritual well-being. Because the trial court made these determinations on the basis of clear and convincing evidence, termination under this section was also proper.

The trial court also terminated Father's and Mother's parental rights under 23 Pa.C.S.A. §2511(a)(8), which permits termination when:

> The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

This section does not require the court to evaluate a parent's willingness or ability to remedy the conditions which initially caused placement or the availability or efficacy of DHS services offered to the parent, only the present state of the conditions. _In re: Adoption of K.J._, 938 A.2d 1128, 1133 (Pa. Super. 2009). The party seeking termination must also prove by clear and convincing evidence that the termination is in the best interest of the child. The best interest of the child is determined after consideration of the needs and welfare of the child such as love comfort, security and stability. _In re Bowman_, A.2d 217 (Pa. Super. 1994). See also _In re Adoption of T.T.B._, 835 A.2d 387, 397 (Pa. Super. 2003).

The Children in this case have been in DHS custody since December 1, 2014 – eighteen months at the time of the trial. The Children were removed because Mother and Father were unable to parent. Mother's SCP objectives were to attend CEU for assessment and recommended drug treatment, obtain appropriate housing, attend supervised visitation, sign appropriate consents, attend medical appointments for the Children, attend mental health treatment and obtain employment, housing and parenting services at ARC. (N.T. 8/16/16, pgs. 20-22). Mother did not successfully complete employment or housing services at ARC, and does not have appropriate housing. (N.T. 8/16/16, pgs. 23, 74-75, 78). Mother did not attend any of the Children's medical appointments, though she was invited. (N.T. 8/16/16, pg. 24). Mother has not engaged with mental health treatment. (N.T. 8/16/16, pgs. 24-25). Mother never attended CEU, never obtained an assessment and did not engage in drug and alcohol treatment until May 2016. (N.T. 8/16/16, pgs. 26-27). Mother has consistently tested positive for methadone since beginning treatment. (N.T. 8/16/16, pg. 81). On two occasions, Mother 'washed' her urine, as evidenced by near-diluted

levels of creatinine. Mother was not credible during her testimony. (N.T. 8/16/16, pgs. 82-86). Mother testified that she had completed parenting classes in her drug and alcohol treatment program, but only produced a certificate with crossed-out dates. (N.T. 8/16/16, pgs. 86-87, 90). Mother never signed the required consents. (N.T. 8/16/16, pg. 70). She has consistently attended supervised visits in the last three months, but for the first fourteen months of the case, Mother missed nearly half her visits. Reunification with Mother is not appropriate at this time. (N.T. 8/16/16, pgs. 28-29). Mother's objectives have been the same for the life of this case, and have been explained to her a number of times. (N.T. 8/16/16, pgs. 20-22, 28). As of the time of the trial, Mother had not remedied the conditions which brought the Children into care, and was not ready to parent. Child 1 is in a foster home with parents who provide for his physical and emotional needs. (N.T. 8/16/16, pg. 52). Child 1 does not suffer any effects when Mother misses visits. (N.T. 8/16/16, pgs. 53-54). Child 1 is happy to visit with Mother, but her inconsistent visitation has left him in limbo and is unhealthy for his mental wellbeing. (N.T. 8/16/16, pgs. 56, 59). Child 2 is bonded with his foster parents, who wish to adopt him. (N.T. 8/16/16, pgs. 48-49). Child 2 does not have a strong relationship with Mother. (N.T. 8/16/16, pg. 50). It is in the best interest of the Children to terminate Mother's parental rights so they may be adopted. (N.T. 8/16/16, pgs. 48-49, 56, 59). Mother is not ready, willing or able as of today to parent the Children full-time. The record contains clear and convincing evidence that the trial court did not abuse its discretion and termination under this section was also proper.

Child 2 has been in DHS custody since December 1, 2014 – eighteen months at the time of the trial. Child 2 was removed because Mother and Father were unable to parent. Father's objectives, which have remained the same for the life of the case, are to attend supervised visits, obtain mental health treatment, obtain state-issued identification and attend ARC for housing and employment services. Father did not complete housing services at ARC or provide his current address. (N.T. 8/16/16, pgs. 31, 66, 95). Father has employment but has not provided pay stubs, despite court orders. (N.T. 8/16/16, pgs. 32-33). Father was ordered to obtain state identification. The only evidence that Father began this process is a notice from the Department of Homeland Security, which shows a "received date" of August 1, 2016. (N.T. 8/16/16, pgs. 33, 91, 96), (Father's Exhibit 1). Father did not engage with any mental health services, and testified that he does not wish to engage. (N.T. 8/16/16, pg. 34, 69, 91). Father missed a quarter of his supervised visits. (N.T.

8/16/16, pg. 37). Father has never been compliant with court orders or successfully completed all his SCP objectives, though they have been explained to him several times. (N.T. 8/16/16, pg. 39). The conditions that led to removal of the Child 2 still exist, and Father is not able to parent him safely at present. Child 2 is in a pre-adoptive home with bonded foster parents who care for his needs. It is in Child 2's best interest to be adopted. (N.T. 8/16/16, pgs. 48-49). Child 2 recognizes Father during visits, but there is no deeper relationship. (N.T. 8/16/16, pg. 68). It is in Child 2's best interest to terminate Father's parental rights so that he can be adopted. (N.T. 8/16/16, pg. 49). Father is not ready, willing or able as of today to parent Child 2 full-time. The record contains clear and convincing evidence that the trial court did not abuse its discretion and termination under this section was also proper.

After a finding of any grounds for termination under Section (a), the court must, under 23 Pa.C.S.A. §2511(b), also consider what - if any - bond exists between parent and child. *In re Involuntary Termination of C.W.S.M. and K.A.L.M.*, 839 A.2d 410, 415 (Pa. Super. 2003). The trial court must examine the status of the bond to determine whether its termination "would destroy an existing, necessary and beneficial relationship". *In re Adoption of T.B.B.* 835 A.2d 387, 397 (Pa. Super. 2003). In assessing the parental bond, the trial court is permitted to rely upon the observations and evaluations of social workers. *In re K.Z.S.*, 946 A.2d 753, 762-763 (Pa. Super. 2008). In cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. The extent of any bond analysis depends on the circumstances of the particular case. *In re K.Z.S.* at 762-763. However under 23 Pa.C.S.A. §2511(b), the rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical, if found to be beyond the control of the parent.

Mother has missed nearly half her visits over the life of this case. (N.T. 8/16/16, pgs. 28-29). Child 1 interacts well with Mother during visits, and is sad when she does not attend. (N.T. 8/16/16, pgs. 54-56, 59). However, Mother's inconsistent attendance has caused Child 1 to be sad and worried more than is normal for a child of his age. (N.T. 8/16/16, pg. 55). Mother's inconsistency is not healthy for Child 1's mental and emotional wellbeing. Mother's relationship with Child 1 is not a beneficial one, but one which places emotional strains upon Child 1. (N.T. 8/16/16, pgs. 56, 59). Child 1 would not suffer irreparable harm if Mother's rights were

terminated. (N.T. 8/16/16, pgs. 56-57). Child 1 is placed with foster parents who care for his needs, and it would be in his best interest to be adopted. (N.T. 8/16/16, pg. 52). While Mother has a positive relationship with Child 2, Child 2 does not reciprocate. (N.T. 8/16/16, pg. 50). Child 2 is bonded with his foster parents, and would suffer no irreparable harm if Mother's parental rights were terminated. It is in Child 2's best interest to be adopted. (N.T. 8/16/16, pg. 49). Child 1 and Child 2 visit each other regularly, and their foster parents interact well. (N.T. 8/16/16, pg. 57). Consequently, the court did not abuse its discretion when it found that it was clearly and convincingly established that there was no positive parental bond, and that termination of Mother's parental rights would not destroy an existing beneficial relationship.

Father has missed a quarter of his visits with Child 2 over the life of this case. (N.T. 8/16/16, pg. 37). Child 2 recognizes Father during visits, but there is no hint of a deeper, parent-child bond. (N.T. 8/16/16, pgs. 50, 68). The CUA social worker testified that Child 2 is in a pre-adoptive home. (N.T. 8/16/16, pg. 48). Child 2 is bonded with her foster parents, and would suffer no irreparable harm if Father's parental rights were terminated. It is in Child 2's best interest to be adopted. (N.T. 8/16/16, pg. 49). Consequently, the court did not abuse its discretion when it found that it was clearly and convincingly established that there was no positive parental bond, and that termination of Father's parental rights would not destroy an existing beneficial relationship.

Mother and Father also allege that the court erred in changing the Children's permanency goal from reunification to adoption. In a change of goal proceeding, the child's best interest must be the focus of the trial court's determination. The child's safety and health are paramount considerations. *In re A.H.*, 763 A.2d 873 (Pa. Super. 2000). Pennsylvania's Juvenile Act recognizes family preservation as one of its primary purposes. *In the Interest Of R.P. a Minor*, 957 A.2d 1205 (Pa. Super. 2008). As a result, welfare agencies must make efforts to reunify the biological parents with their child. Nonetheless, if those efforts fail, the agency must redirect its efforts toward placing the child in an adoptive home. Agencies are not required to provide services indefinitely when a parent is unwilling or unable to apply the instructions received. *In re R.T.*, 778 A.2d 670 (Pa. Super. 2001). The trial court should consider the best interest of the child as it exists presently, rather than the facts at the time of the original petition.

Mother has not completed drug and alcohol treatment. (N.T. 8/16/16, pgs. 80-81, 86-87, 90). She has not engaged with mental health treatment. (N.T. 8/16/16, pgs. 24-25). Mother does not have employment or appropriate housing. (N.T. 8/16/16, pgs. 23, 74-75, 78). She has not gone to CEU for drug screens or the court-ordered assessment. (N.T. 8/16/16, pgs. 26-27). She has missed nearly half of her visits with the Children. Mother's visits have never been changed to unsupervised. (N.T. 8/16/16, pgs. 28-29). She has not attended the Children's medical appointments. (N.T. 8/16/16, pg. 24). The Children do not have a beneficial relationship with Mother. (N.T. 8/16/16, pgs. 50, 56, 59). Mother is not ready, willing or able to care for the Children at this time. DHS and CUA have made reasonable efforts to provide Mother with services." (N.T. 8/16/16, pg. 109). It would be in the best interest of the Children to change their permanency goal to adoption and allow their foster parents to adopt them. The foster parents provide the Children with safe, permanent homes. (N.T. 8/16/16, pgs. 48-49, 50, 52). Because these facts were clearly and convincingly established by the credible testimony of DHS's witnesses, the court's change of permanency goal from reunification to adoption was proper.

Father does not have appropriate housing. After eighteen month, he is still unable to provide a current address. (N.T. 8/16/16, pgs. 31, 66, 95). He cannot provide proof of his employment. (N.T. 8/16/16, pgs. 32-33). Father has never obtained a non-driver's state identification, as ordered by the court from the beginning of the case. Father attempted to show that he applied for work authorization through the Department of Homeland Security, but gave no explanation why it took eighteen months to begin the process. (N.T. 8/16/16, pgs. 33-34, 91, 96), (Father's Exhibit 1). Father testified that he will not engage with mental health services. (N.T. 8/16/16, pgs. 34, 69, 91). He has missed a quarter of his visits with Child 2. Father's visits have never been changed to unsupervised. (N.T. 8/16/16, pgs. 35-37). Father has a criminal record for sexual offenses against a minor. (N.T. 8/16/16, pg. 46). DHS and CUA have made reasonable efforts to provide Father with services. (N.T. 8/16/16, pg. 109). Child 2 recognizes Father during visits, but there is no deeper relationship. (N.T. 8/16/16, pgs. 50, 68). Child 2 is in a pre-adoptive home with bonded foster parents who care for her needs. It is in Child 2's best interest to be adopted. (N.T. 8/16/16, pgs. 48-49). Because these facts were clearly and convincingly established by the credible testimony of DHS's witnesses, the court's change of permanency goal from reunification to adoption was proper.

**Conclusion:**

For the aforementioned reasons, the court found that DHS met its statutory burden by clear and convincing evidence regarding termination of Father's and Mother's parental rights pursuant to 23 Pa.C.S.A. §2511(a)(1), (2), (5), (8) and (b) since it would best serve the Children's emotional needs and welfare. Changing the Children's permanency goal to adoption was in their best interest. The trial court's termination of Father's and Mother's parental rights and change of permanency goal to adoption was proper and should be affirmed.

By the court,

Joseph Fernandes J.